**UNITED STATES of America,**
**Appellee,**

v.

**Carmelo SANSONE, Appellant.**
**No. 224, Docket 23572.**

United States Court of Appeals
Second Circuit.

Argued Jan. 18–19, 1956.
Decided March 29, 1956.

Writ of Certiorari Denied
June 11, 1956.
See 76 S.Ct. 1055.

Paul W. Williams, U. S. Atty., S.D.N. Y., New York City (Clement J. Hallinan, Jr., Asst. U. S. Atty., New York City, of counsel), for appellee.

Florence M. Kelley, New York City (Haliburton Fales, 2d, New York City, of counsel), for appellant.

Before MEDINA, HINCKS and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The appellant was found guilty after trial by jury of violating 18 U.S.C. § 371, in that he conspired with others to import and sell narcotics. He appeals from the judgment of conviction and sentence of one year, relying for reversal on alleged errors at the trial.

The Government's case rested on the testimony of an informer, Pierre La-Fitte, corroborated at several points by the testimony of Government narcotics agents. The conspiracy disclosed was substantially as follows: In April, 1951, LaFitte became acquainted with a man named Orsini. At that time both men were being detained on Ellis Island by the Immigration authorities. Orsini told LaFitte that he was a leader in a group which had been dealing in narcotics both in this country and abroad, and proposed that LaFitte join the group. LaFitte ostensibly consented, but reported the conversation to a narcotics agent, Giuliani. Thereafter, unknown to Orsini, he acted under Giuliani's instructions.

In May, 1951, Giuliani obtained the release of LaFitte from Ellis Island. La-Fitte first contacted one Randazzo, whom Orsini had named as one of the conspirators, and attempted to purchase narcotics. Randazzo was unable or unwilling to supply LaFitte at this time, but revealed details of the conspiracy to LaFitte and expressed surprise that he had not yet dealt with Sansone, the appellant. Having become dissatisfied with the progress he was making with

Randazzo, LaFitte visited Orsini at Ellis Island in June. Orsini then put LaFitte in touch with one Shillitani, named by Orsini as another member of the conspiracy. After receiving assurance through his wife from Orsini that LaFitte could be trusted, Shillitani related details of the membership and operations of the conspiracy. On July 3, 1951, LaFitte purchased about 8 ounces of heroin from Shillitani.

In July, 1951, LaFitte again visited Orsini at Ellis Island. Orsini promised to put LaFitte in touch with the French members of the conspiracy. LaFitte then met appellant, who apparently did not believe that Orsini had sent him. In order to allay appellant's suspicions, Orsini gave LaFitte a letter of introduction to give to appellant. Appellant then accepted LaFitte as a safe man with whom to deal and promised to arrange for the sale of narcotics to him. During July appellant and LaFitte met on numerous occasions, and appellant revealed to LaFitte many details of the conspiracy. Before any sale of narcotics by appellant to LaFitte was consummated, however, appellant and other members of the conspiracy were arrested.

 1. Appellant objects to the admission of Giuliani's testimony of a conversation between LaFitte and appellant. This conversation occurred on July 9, 1951, and constituted one of the main items in the case against appellant. LaFitte and appellant had met at the Normandy Restaurant and had gone by car to Riverside Drive and 142nd Street, a rendezvous known to Giuliani. LaFitte was wearing a concealed transmitter, and agent Giuliani, stationed some two hundred feet away, was equipped with a portable receiving set tuned to the same frequency. At the trial both LaFitte and Giuliani testified concerning the conversation, during which the appellant had made incriminating remarks. Appellant objects to the admission of Giuliani's testimony on the grounds that an improper foundation was laid because the Government failed to show that the transmitter-receiver unit was an effective means of communication by the use of which voices could be accurately recognized, and that the identification of appellant's voice by Giuliani, in any event, was possible only as a result of an illegal arrest of appellant for vagrancy by New York City police, an arrest caused by Giuliani.

We think that an adequate foundation was laid for the admission of Giuliani's testimony concerning the July 9 conversation. When a portable transmitting-and-receiving set, or other device, is used to overhear conversations, the initial qualification for admission of evidence so obtained involves two sets of interrelated problems: First, whether the device used is an effective means of communicating sound, and, second, the identification of the alleged speaker. We think that the general public, in this day of car telephones, home recording instruments, and amateur transmitting-and-receiving equipment, is sufficiently aware of the effectiveness and the weaknesses of these mechanical devices so that the party advancing the evidence need not lay an elaborate foundation of expert testimony in order for such evidence to be admitted. Such evidence, however, should be treated with considerably greater caution than evidence arising from telephone conversations, due to the much greater familiarity of the general public with the characteristics and potentialities of the telephone. See the discussion in VII Wigmore on Evidence, 3d ed., 1940, §§ 2155–2157. In this case, Giuliani's testimony that he visually recognized LaFitte and appellant carrying on the conversation that he overheard on the receiving device bolstered the admission of his testimony concerning the conversation. Giuliani testified that he tested the mechanism on the same day and found it operative; that he saw appellant and LaFitte enter a car earlier in the day; that he saw appellant and LaFitte disembark from the same auto and converse; and that he recognized appellant's voice from a prior conversation with him. Under these cir-

cumstances, the evidence was admissible. The circumstances of transmission, the distance of Giuliani from the conversation, and other similar considerations, went to the weight of the evidence rather than to its admissibility. See, generally, N. L. R. B. v. Carpet, L. & R. T. L., 10 Cir., 1954, 213 F.2d 49; United States v. Bucur, 7 Cir., 1952, 194 F.2d 297; Andrews v. United States, 10 Cir., 1935, 78 F.2d 274, 105 A.L.R. 322; United States v. Easterday, 2 Cir., 1932, 57 F.2d 165, certiorari denied 286 U.S. 564, 52 S.Ct. 646, 76 L.Ed. 1297; Kilpatrick v. Kilpatrick, 1937, 123 Conn. 218, 193 A. 765.

Appellant objects to the admission of Giuliani's testimony on a second ground, viz., that the identification of appellant's voice by Giuliani was the fruit of an illegal arrest procured by Giuliani. Giuliani had testified that he had talked with appellant on previous occasions and hence was in a position to recognize his voice. But on cross-examination Giuliani testified that except for April 27 and July 9 he had only briefly seen appellant "just on the street." Thus the only opportunity for Giuliani to hear him speak prior to July 9 was on April 27, the day on which appellant had been arrested for vagrancy by the New York City police on a charge later dismissed. Giuliani admitted that he had "something to do with causing that arrest." Thus it appears that a federal officer without power to arrest for vagrancy had caused the New York police to do what he couldn't. In the face of such evidence, we would incline to think the burden was on the Government to prove that Giuliani's conversation with appellant on April 27 was not the fruit of Giuliani's illegal action in causing appellant's arrest. United States v. Coplon, 2 Cir., 1950, 185 F.2d 629, 636, 28 A.L.R. 2d 1041, certiorari denied 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688.

It is unnecessary for us to decide, however, whether we would reverse for the reception of Giuliani's testimony that he recognized appellant's voice on July 9, and whether the inadmissibility of that item of evidence would render his testimony as to the entire conversation incompetent, for appellant failed to call this objection to the attention of the trial court. Appellant objected to the admission of Giuliani's testimony on the specific grounds of improper foundation and invasion of the right of privacy, but did not raise the objection he is now pressing—an objection which relied on the proof and interpretation of collateral matters (i. e., Giuliani's arrest by the New York City police). While we may in our discretion notice errors not brought to the attention of the trial court, Rule 52(b), Federal Rules of Criminal Procedure, 18 U.S.C., this discretion will not be exercised to reverse a conviction based on ample evidence unless the errors have seriously prejudiced the defendant or affected the fairness, integrity, or public reputation of judicial proceedings. See United States v. Atkinson, 1936, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555; United States v. Jones, 7 Cir., 1953, 204 F.2d 745, certiorari denied 346 U.S. 854, 74 S.Ct. 67, 98 L.Ed. 368, rehearing denied 346 U.S. 905, 74 S.Ct. 216, 98 L.Ed. 404. Appellant was not substantially prejudiced by Giuliani's testimony that he recognized appellant's voice, since Giuliani also testified that he was well qualified to recognize and did recognize LaFitte's voice, and that he visually identified appellant as the person holding the conversation with LaFitte. Under the circumstances, we conclude that the point is not available to the appellant on appeal. See On Lee v. United States, 1952, 343 U.S. 747, 749, note 3, 72 S.Ct. 967, 96 L.Ed. 1270, rehearing denied 344 U.S. 848, 73 S.Ct. 5, 97 L.Ed. 659; United States v. Jones, supra; United States v. Herskovitz, 2 Cir., 1954, 209 F.2d 881; United States v. Gillette, 2 Cir., 1951, 189 F.2d 449, certiorari denied 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625, rehearing denied 342 U.S. 879, 72 S.Ct. 164, 96 L.Ed. 661; 345 U.S. 945, 73 S.Ct. 827, 97 L.Ed. 1370.

■ 2. Appellant objects to the refusal of the trial court to entertain a motion to suppress evidence alleged to

have been illegally seized. LaFitte testified that he had written his telephone number on a card and given the card to appellant. The card was obtained by the arresting officers at the time of appellant's arrest, and was introduced into evidence at the trial. Appellant's motion to suppress was made on the first day of trial and was denied by the court on the ground that it was untimely. The record indicates that appellant's counsel was aware of the seizure of the card nearly two years before the date of the motion to suppress. Rule 41(e) provides that "The motion [to suppress evidence] shall be made before trial or .hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing." The trial court having properly declined to exercise its discretion, no error appears. See Wrightson v. United States, 1955, 95 U.S.App.D.C. 390, 222 F.2d 556; United States v. Di Re, 2 Cir., 1947, 159 F.2d 818, affirmed 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; United States v. Salli, 2 Cir., 1940, 115 F.2d 292.

■ 3. Appellant urges that the trial court erred in refusing to make available and mark for identification an FBI report containing information concerning alleged prior convictions of LaFitte. The Government gave the report to the trial court for inspection. The trial court ruled that it would not require the Government to hand over to appellant the document itself, but that it would abstract from the document the information relating to prior convictions of LaFitte for use by the appellant in impeaching LaFitte. Appellant was given such an abstract, and made vigorous use of the information contained therein in cross-examining LaFitte. We think that the appellant could not possibly have been prejudiced by this ruling. The FBI report was sought by appellant solely for the information relating to alleged prior convictions of LaFitte. Even though LaFitte, on cross-examination,

denied that he had been convicted on the specified occasions, the report would not have been admissible to prove these convictions.

■ 4. Appellant was connected with the conspiracy by his own acts and statements as well as by the declarations of his co-conspirators, Orsini, Randazzo and Shillitani. Appellant, however, contends that his own acts and statements all referred to events occurring subsequent to July 3, 1951, and that it was therefore error to permit LaFitte to testify as to what he had on earlier occasions been told of the existence and operations of the conspiracy from 1949 to 1951 by Orsini, Randazzo and Shillitani. The criminal law makes each conspirator liable for the acts of every other conspirator done in pursuance of the conspiracy. The common purpose makes the acts of one the acts of all. And since conspirators have an identity of interest, the admissions of one member have probative value as against another and hence are admissible in evidence as against the other. See Krulewitch v. United States, 1949, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790; Delaney v. United States, 1924, 263 U.S. 586, 590, 44 S.Ct. 206, 68 L.Ed. 462; United States v. Marzano, 2 Cir., 1945, 149 F.2d 923; United States v. Cohen, 2 Cir., 1944, 145 F.2d 82, certiorari denied 323 U.S. 799, 800, 65 S.Ct. 553, 89 L.Ed. 637. In this case all the necessary prerequisites for the use of declarations of a co-conspirator were satisfied: there was ample evidence of the existence of a conspiracy; the appellant was connected with that conspiracy by competent evidence; and the declarations of the co-conspirators were made during the existence of the conspiracy and could have been found by the jury to have been made in furtherance of the conspiracy as an inducement and explanation to a supposed new member, LaFitte. Under the circumstances, they were admissible.

Similar principles apply to the evidence of the sale of narcotics to LaFitte by Shillitani. Appellant claims that this

sale was an isolated and independent transaction, but the jury could have concluded from the evidence that it was an act in furtherance of the conspiracy. The rule is clear that one who joins an existing conspiracy takes it as it is, and is therefore held accountable for the prior conduct of co-conspirators. See United States v. Witt, 2 Cir., 1954, 215 F.2d 580, 583, certiorari denied Talanker v. United States, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697; United States v. Lekacos, 2 Cir., 1945, 151 F.2d 170, 172, reversed on other grounds sub nom. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; United States v. Bucur, 7 Cir., 1952, 194 F.2d 297, 302; United States v. Buckner, 2 Cir., 1940, 108 F.2d 921, 930, certiorari denied 309 U.S. 669, 60 S.Ct. 613, 84 L.Ed. 1016; United States v. Manton, 2 Cir., 1939, 107 F.2d 834, certiorari denied 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012. Here the situation is even clearer, for appellant is not characterized in the declarations of his co-conspirators as a late joiner, but as one of the original partners of the conspiracy formed in 1949. Nor does it make any difference that when the evidence concerning the sale of July 3 was introduced, the prosecution had not yet proved appellant's connection with the conspiracy. The order in which evidence is received is within the discretion of the trial court. United States v. Pugliese, 2 Cir., 1945, 153 F.2d 497, 500; Cohen v. United States, 2 Cir., 1907, 157 F. 651, 655, certiorari denied 207 U.S. 596, 28 S.Ct. 261, 52 L.Ed. 357; Hoeppel v. United States, 1936, 66 App. D.C. 71, 85 F.2d 237, 242, certiorari denied 299 U.S. 557, 57 S.Ct. 19, 81 L.Ed. 410; rehearing denied 299 U.S. 622, 57 S.Ct. 188, 81 L.Ed. 458. Since the jury could conclude from the evidence that appellant had been a member of the conspiracy not only on July 3, 1951, when the sale objected to was made, but as early as 1949, the evidence of the sale was admissible.

5. Appellant advances numerous other claims of error in the admission of evidence and in the conduct of the trial, but we think that these further claims, entirely without merit, require no discussion.

Affirmed.