UNITED STATES of America,

v.

Harry STROMBERG et al.

United States District Court
S. D. New York.

Dec. 27, 1957.

Paul W. Williams, U. S. Atty., S. D. New York, New York City, Alan W. Richenaker, Asst. U. S. Atty, New York City, of counsel, for the United States.

Moses Polakoff, New York City, for defendant Harry Stromberg.

Max Fruchtman, New York City, for defendant Henry Teitlebaum.

James J. Cally, New York City, for defendant Jean Aron.

Maurice Edelbaum, New York City, for defendant Nathan Behrman.

Frederick B. Boyden, New York City, for defendant Martin De Saverio.

Anthony V. Vecchiarello, New Rochelle, N. Y., for defendant Jane Pierri.

George Feit, New York City, for defendant George Brisbois.

Irwin Klein, New York City, for defendant Herman Samnick.

Murray E. Gottesman, New York City, for defendant Benjamin Danis.

Curran, Mahoney, Cohn & Stim, New York City, for defendant Saul Snyder.

Lea S. Singer, New York City, for defendants Thomas Greenberg and George Baker.

Herbert F. Schmelzer, New York City, for defendant Tommy Akel.

William J. Cantwell, New York City, for defendant William Paradise.

William F. Rogers, New York City, for defendant Joseph Paradise.

James J. Hanrahan, New York City, for defendant Steve Puco.

PALMIERI, District Judge.

The Grand Jury has found an indictment charging forty-six defendants with conspiring among themselves and with sixteen other persons not named as defendants and with divers other persons to the Grand Jury unknown to violate 18 U.S.C. § 212 (1952),[1] 21 U.S.C.A. § 173, and 21 U.S.C.A. § 174,[2] and to

---

1. This section reads as follows:

"§ 212. Offer of threat to customs officer or employee.

"Whoever gives, offers, or promises any money or thing of value, directly or indirectly, to any officer or employee of the United States in consideration of or for any act or omission contrary to law in connection with or pertaining to the importation, appraisement, entry, examination, or inspection of merchandise or baggage, or of the liquidation of the entry thereof, or by threats or demands or promises of any character attempts improperly to influence or control any such officer or employee of the United States as to the performance of his official duties, shall be fined not more than $5,-000 or imprisoned not more than two years, or both.

"Evidence, satisfactory to the court, of such giving, offering, or promising to give, or attempting to influence or control, shall be prima facie evidence that the same was contrary to law."

2. These sections provide:

"§ 173. Importation of narcotic drugs prohibited; exceptions; crude opium for manufacture of heroin; forfeitures.

"It is unlawful to import or bring any narcotic drug into the United States or any territory under its control or jurisdiction; except that such amounts of crude opium and coca leaves as the Commissioner of Narcotics finds to be necessary to provide for medical and legitimate uses only, may be imported and brought into the United States or such territory under such regulations as the Commissioner of Narcotics shall prescribe, but no crude opium may be imported or brought in for the purpose of manufacturing heroin. All narcotic drugs imported under such regulations shall be subject to the duties which are now or may hereafter be imposed upon such drugs when imported.

"Any narcotic drug imported or brought into the United States or any territory under its control or jurisdiction, contrary to law, shall (1) if smoking opium or opium prepared for smoking, be seized and summarily forfeited to the United States Government without the necessity of instituting forfeiture proceedings of any character; or (2), if any other narcotic drug be seized and forfeited to the United States Government, without regard to its value, in the manner provided by sections 514 and 515 of Title 19, or the provisions of law hereafter enacted which are amendatory of, or in substitution for, such sections. Any narcotic drug which is forfeited in a proceeding for condemnation or not claimed under such sections, or which is summarily forfeited as provided in this subdivision, shall be placed in the custody of the Commissioner of Narcotics and in his discretion be destroyed or delivered to some agency of the United States Government for use for medical or scientific purposes."

"§ 174. Same; penalty; evidence.

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the trans-

defraud the United States of its right to have the functions "of the United States Customs Service exercised and administered free from unlawful impairment and obstruction, corruption, improper influence, dishonesty and hope of unlawful reward." The indictment, which is in one count, charges that three of the defendants were, during the course of the conspiracy, employees of the United States Customs Service. The indictment charges six further "parts" of the conspiracy.[3] The first three of these further "parts" are substantive violations of 18 U.S.C. § 212 (1952), 21 U.S.C.A. § 173, and 21 U.S.C.A. § 174.[4] The fourth further part is charged to be the dilution of heroin prior to its distribution; the fifth part is unlawful distribution of heroin and cocaine; and the sixth is charged to be that "said defendants and co-conspirators would misrepresent, conceal and hide and cause to be misrepresented, concealed and hidden, the purposes of and the acts done in furtherance of the conspiracy." The indictment then charges 30 overt acts in pursuance of the conspiracy and to effect the objects thereof. Of these acts, one is the making of a check, twelve are conversations, one

is the sale of heroin, one is the possession of heroin, opium, and opium dross, one is the presence of heroin and opium in an apartment of one of the non-defendant co-conspirators, three are payments of money,[5] one is a drive (evidently in an automobile), six are receipts of money, two are airplane flights, one is the examination of a sample of heroin, and one is the delivery of approximately fifty pounds of heroin. The earliest of the overt acts charged is charged to have occurred on January 29, 1951, and the latest overt act charged is charged as occurring on September 17, 1955. The conspiracy is charged as existing from on or about January 1, 1950 until on or about May 1, 1956. With the one exception noted above, the overt acts charged all involve at least one of the defendants named in the indictment, although 25 of the defendants named in the indictment are not charged with the commission of an overt act.[6]

Numerous pre-trial motions have been made by 16 of the defendants in this case. For convenience, the motions will be discussed in groups composed of those which present the same or similar questions.

3. Each of these further "parts" is charged in a separate paragraph, beginning with the following words: "It was further a part of said conspiracy that * * *."

4. Paragraph 3 of the indictment charges, as a further "part" of the conspiracy, unlawful importation of "the aforesaid narcotic drugs" although no narcotic drugs are mentioned in the preceding portions of the indictment. Paragraph 4 charges unlawful importation of heroin, opium, and cocaine. On oral argument the Assistant United States Attorney agreed to the striking of the words "the aforesaid" from paragraph 3. An order to that effect should be submitted. Fed. R.Crim.P. 7(d), 18 U.S.C.

5. One of these payments is charged to be "as partial payment for one-quarter kilogram of heroin and five ounces of cocaine * * *."

6. See note 8, infra.

portation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

"Whenever on trial for a violation of this subsection the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

## I

### Inspection of the Grand Jury Minutes

■ Defendants Samnick, Snyder, William Paradise and Joseph Paradise seek inspection of the Grand Jury minutes. Defendant Snyder, in an affidavit accompanying his motion, asserts his innocence and his belief "that there was no evidence presented before the Grand Jury to prove your deponent guilty of the crime charged in the indictment herein and to justify the return of this indictment against him." In an affidavit supporting his motion, defendant Samnick asserts, in substance, that inspection of the Grand Jury minutes will reveal "whether" the indictment was found on sufficient evidence and that it will disclose the "character and prior record" of one Pierre Lafitte, [7] who is neither a defendant nor a co-conspirator in this case, although he is named in some of the overt acts. Defendant William Paradise seeks inspection of the minutes to determine "whether or not a motion will lie to dismiss the indictment" on the ground that illegal and/or insufficient evidence was submitted to the Grand Jury.

■ "A mere request to inspect the minutes, without any statement of facts indicating insufficiency of the evidence, is not enough to require the court to inspect the minutes. There is a presumption that the grand jury acted on sufficient evidence." United States v. Weber, 2 Cir., 197 F.2d 237, 238, certiorari denied, 1952, 344 U.S. 834, 73 S.Ct. 42, 97 L.Ed. 649; cf. Costello v. United States, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397. Nor is inspection of Grand Jury minutes proper for the purpose of discovery of material which may have value as impeaching the credibility of a possible Government witness. Fed. R.Crim.P. 6(e). See Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, for a discussion of the Government's duties respecting informers.

There being no statement of facts indicating insufficiency of the evidence, these motions for inspection of the Grand Jury minutes are denied.

## II

### Motions for Election of Offense to be Prosecuted

■ Defendants Samnick, Danis, De Saverio, Greenberg, Baker and Aker move for an order compelling the United States Attorney to elect which of allegedly separate offenses shall be prosecuted. These motions proceed upon the theory that there were separate conspiracies to accomplish each of the objects set forth in the indictment. It must be remembered, however, that these motions are addressed to the pleadings and not to the proof. The indictment charges but one conspiracy. The defendants' motions proceed upon a confusion of the conspiracy, which is charged to be one, with its aims, which are charged to be many. A single conspiracy may, however, have many objects. Braverman v. United States, 1942, 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23; United States v. Manton, 2 Cir., 1939, 107 F.2d 834, 838, certiorari denied, 1940, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012. Since there is but one offense charged no election is possible.

■ Defendants also claim that there is confusion as to the statute under which they will be sentenced. They claim that they may be sentenced under

---

7. For reported cases in which Lafitte has appeared as a witness, see United States v. Sansone, 2 Cir., 1953, 206 F.2d 86; United States v. Sansone, 2 Cir., 231 F.2d 887, certiorari denied 1956, 351 U.S. 987, 76 S.Ct. 1055, 100 L.Ed. 1500; United States v. Aron, 2 Cir., 1957, 239 F.2d 857; United States v. Kretske, 7 Cir., 220 F.2d 785, remanded for a new trial upon confession of error, 1955, 350 U.S. 807, 76 S.Ct. 51, 100 L.Ed. 725; United States v. Reina, 2 Cir., 242 F.2d 302, certiorari denied sub nom. Moccio v. United States, 1957, 354 U.S. 913, 77 S. Ct. 1294, 1 L.Ed.2d 1427.

the "built-in" conspiracy clause of 21 U.S.C.A. § 174 with its mandatory sentences or the general conspiracy statute, 18 U.S.C. § 371 (1952). While it is true that the same conspiracy may be punishable under more than one statute, see, e. g., United States v. Tannuzzo, 2 Cir., 174 F.2d 177, certiorari denied, 1949, 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 551, this does not turn a single conspiracy into two. Any argument as to the legal sentence applicable in this case is now premature.

Fed.R.Crim.P. 7(c) provides that "[t]he indictment or information shall state for each count the official or customary citation of the statute * * * which the defendant is alleged therein to have violated." At the end of the indictment there is the following notation: "(Title 18, United States Code, Section 371)." The effect of an error in this citation is also set forth in the Rule. See also, United States v. Tannuzzo, supra.

Accordingly, these motions are also denied.

### III

### Motions for Dismissal of the Indictment

Various of the defendants have moved for dismissal of the indictment.

■ 1. Defendants Behrman and Samnick move for dismissal on the ground that the indictment does not allege sufficient facts to constitute an offense against the United States. The indictment, as may be seen from the summary of it set forth above, charges that certain named persons conspired together for the purpose of effecting certain unlawful objects, which are set forth; and charges that certain overt acts were committed in furtherance of the conspiracy. This is sufficient, for all the elements of the offense are set forth. Hagner v. United States, 1932, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; Fed.R.Crim.P. 7(c).

■ In support of the contention that no offenses are charged, it is urged that there can be no conspiracy to violate 18 U.S.C. § 212 (1952), quoted in footnote 1, supra, since narcotics are not "merchandise." Reliance is placed on Palmero v. United States, 1 Cir., 1940, 112 F.2d 922. The Palmero case, however, stands only for the proposition that a defendant may not be punished doubly for one act which violates both a general statute prohibiting importation of "merchandise" contrary to law, and another particularly prohibiting the importation of opium. The Court held that passage of the particular prohibition against importation of opium withdrew opium from the class of "merchandise" importation of which was prohibited by the general statute. The decision is not authority, however, for holding that narcotics are not "merchandise" within the meaning of 18 U.S.C. § 212 (1952). Obviously, the importation of narcotics, prohibited by 21 U.S.C.A. § 173 and the improper influencing of a customs officer in respect to his duties regarding the importation of narcotics are separate acts.

■ It is also urged that there can be no conspiracy to violate 18 U.S.C. § 212 (1952) since the substantive crime (bribery) necessarily requires the mutual cooperation of those charged as the conspirators. United States v. Sager, 2 Cir., 1931, 49 F.2d 725. While this doctrine is accepted as settled, in this Circuit, where the substantive crime has, in fact, been committed, United States v. Zeuli, 2 Cir., 1943, 137 F.2d 845; see Pinkerton v. United States, 1946, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489, it has no application here, for the single conspiracy charged had, as its objects, not only the giving and receiving of a bribe, but other objects as set forth above, for which concert is not required. United States v. Zeuli, supra; United States v. Center Veal & Beef Co., 2 Cir., 1947, 162 F.2d 766.

■ 2. Defendants Danis, Samnick, Snyder and Pierri move for a dismissal of the indictment on the ground that in-

sufficient legal evidence or insufficient facts were presented to the Grand Jury to warrant return of the indictment. These motions are denied on authority of Costello v. United States, 1956, 350 U.S. 359, 363-364, 76 S.Ct. 406, 100 L.Ed. 397.

3. Defendants Akel, Baker, Danis, Greenberg, Joseph Paradise, William Paradise and Samnick move for dismissal of the indictment on the ground that it is duplicitous. As set forth in part II of this opinion, however, that contention is without merit.

■ 4. Defendants Samnick and Danis move for dismissal of the indictment on the ground that it violates their rights as guaranteed by the First and Fifth Amendments to the Constitution of the United States.

The affidavits and briefs submitted in support of these motions do not enlighten me as to the bases of these claims. As to the Fifth Amendment, I assume that the claim is that denial of the motions will deprive the movants of due process. There is no need to repeat the discussion of each motion as it appears elsewhere in this opinion. The action taken in respect to each is consonant with the requirements of due process.

■ The papers are barren of any suggestion as to the manner in which the indictment violates rights secured to the defendants under the First Amendment. I can only surmise that the claim is made because Danis and Samnick are charged with having conversations with certain other persons as overt acts in furtherance of the conspiracy. But an overt act need not be, in itself, criminal, Yates v. United States, 1957, 354 U.S. 298, 334, 77 S.Ct. 1064, 1 L.Ed.2d 1356; and it is the agreement which is punishable, not the overt act, which is the means of executing the crime. Hyde and Schneider v. United States, 1912, 225 U.S. 347, 359, 32 S.Ct. 793, 56 L.Ed. 1114; United States v. Manton, 2 Cir., 1939, 107 F.2d 834, 839, certiorari denied, 1940, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed.

1012. The First Amendment does not protect a conspiracy from punishment because speech is used to effect the crime.

■ 5. Defendants Danis, Joseph Paradise and William Paradise seek dismissal of the indictment on the ground that it is so vague as not to apprise them of the nature and effect of the crime with which they are charged and not to protect them from possible double jeopardy. If these complaints were valid the indictment would be defective. Hagner v. United States, 1932, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861.

■ It would not be fruitful to set forth other decisions in which conspiracy indictments were either upheld or found defective. Each indictment must stand or fall on its own and constructions of other indictments are of minimal precedential value. The general principles are set forth in the Hagner decision, supra. Measured against these principles, the indictment is sufficient. Defendants may not complain because the period of the conspiracy is alleged to be in excess of six years, because of the number of conspirators, because of the geographical area of the conspiracy's operation, because of the number of its objects, nor the number of acts done in its furtherance. The indictment may be as broad as the conspiracy charged. Etie v. United States, 5 Cir., 1932, 55 F.2d 114.

■ 6. Defendant Samnick moves for dismissal of the indictment on the ground that it is time barred under the applicable statute of limitations. 18 U.S.C. § 3282 (Supp. IV). The motion rests upon two misconceptions: (1) That there are several conspiracies, and that those of which Samnick may have been a member are barred; and (2) that the Grand Jury must charge an overt act committed by defendant within the period of the statute. The first point has been dealt with in Part II of this opinion. The second requires no extended discussion. The Government need not allege that any overt act was committed by Samnick. Bannon v. United States,

1895, 156 U.S. 464, 469, 15 S.Ct. 467, 39 L.Ed. 494. The statute of limitations runs from the last overt act committed during the existence of the conspiracy. Fiswick v. United States, 1946, 329 U.S. 211, 216, 67 S.Ct. 224, 91 L.Ed. 196. A conspirator is charged with all that may be done in furtherance of the conspiracy. "A charge of engaging in a far-reaching conspiracy cannot be avoided by showing that what the accused conceived to be a limited conspiracy turned out to be a conspiracy of wider range, of which the supposed smaller one, in fact, was but a segment." United States v. Manton, 2 Cir., 1939, 107 F.2d 834, 849, certiorari denied, 1940, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012. The last overt act charged in the indictment is charged as occurring on September 17, 1955. This is sufficient to save the indictment from attack under the statute of limitations.

7. Defendants Joseph Paradise and William Paradise move for dismissal of the indictment on the theory that it is brought under the wrong statute. They argue that Congress, in adding the "built-in" conspiracy clause to the narcotics law, 70 Stat. 570 (1956), 21 U.S.C.A. § 174, intended to remove prosecutions of conspiracies to violate the narcotics laws from the ambit of the general conspiracy statute, 18 U.S.C. § 371 (1952).

This contention might have some merit if the indictment charged a conspiracy to violate the narcotics laws. But the conspiracy charged is broader than that. Violation of the narcotics laws was but one object of the conspiracy. There is no warrant for assuming that Congress, by its passage of the "built-in" conspiracy provision, intended to prevent prosecutions of conspiracies which had many objects, only one of which was to violate the narcotics laws. Such would be the result if the movants' contentions were accepted.

Accordingly, for all the reasons set forth above, the motions to dismiss are denied.

## IV

### Motions Under Fed.R.Crim.P. 7(f), 16 and 17(c)

Sixteen of the defendants have made motions for pre-trial discovery. There are motions for bills of particulars; subpoenas *duces tecum* have been served upon the Government; there are motions for production of documents; and there is a motion to direct the prosecution to list, describe, and otherwise specify the exhibits it now intends to produce at trial.

1. *Bills of particulars.*[8] Concerning the purpose and function of bills of particulars I will only refer to what I have already said in United States v. Klein, D.C.S.D.N.Y.1954, 124 F.Supp. 476, 479, and in United States v. Giglio, D.C.S.D. N.Y.1954, 16 F.R.D. 268, 271. See for the latter case, *affirmance after conviction,* 2 Cir., 1956, 232 F.2d 589.

It would serve no useful purpose to set forth the demands made for the bills. For the most part, they seek the Government's evidence, the theory of its case, or the names of its witnesses, and are, therefore, properly refused. The Government will be directed, however, to furnish, when and if the information is available to it, a more exact date for the commission of certain of the overt acts, where now only a month and year is charged, and to furnish the name of the carrier by which the airplane flights charged in overt acts 18 and 22 were made.

Defendants Aron and Brisbois seek, in their motions for bills, copies of any statements made by witnesses who

---

8. Each of the sixteen moving defendants seeks a bill of particulars. The Government has agreed to file a bill of particulars setting forth an overt act as to each defendant who is not now mentioned in any overt act in the indictment. I understand that this has already been done informally.

will be called by the Government at trial. These motions are premature. 71 Stat. 595 (1957), 18 U.S.C. § 3500. See United States v. Benson, D.C.S.D.N.Y.1957, 20 F.R.D. 602.

■■■ Defendant Pierri seeks, through a bill of particulars, (1) the names of persons who testified before the Grand Jury as to the overt act in which defendant Pierri is mentioned, (2) a list of subpoenas issued to her by the Grand Jury, (3) the dates she attended, (4) the number of Grand Jurors present when she attended, (5) a certified statement as to the legal formation of the Grand Jury and the names of the members of the Grand Jury voting her indictment, along with their addresses and occupations, (6) the dates on which the original and superseding indictments were filed, and (7) a statement as to whether the United States Attorney knew the Grand Jury before which she testified to be illegally formed. Obviously none of these items is the proper subject for a bill of particulars, the purpose of which is set forth in United States v. Klein, D.C.S.D.N.Y. 1954, 124 F.Supp. 476, 479. Treating the motion as one for an inspection of the Grand Jury minutes, it is denied for the reasons set forth in Part I of this opinion.

Defendants Greenberg and Baker have inserted, in their joint demand for a bill, what appears to be a motion for relief under Fed.R.Crim.P. 16 or 17(c). Such relief is denied for the reasons set forth in paragraphs 2 and 3 of this part of the opinion.

Accordingly, with the exceptions noted above, the motions for bills of particulars are denied.

■■■ 2. *Subpoenas duces tecum.* Defendants Samnick and Snyder seek, through subpoenas *duces tecum* "all documents, books, papers, written statements and objects" in the possession of the Government which are pertinent to this case. These are dragnet subpoenas of the type condemned in United States v. Iozia, D.C.S.D.N.Y.1952, 13 F.R.D.

335, 338 and United States v. Giglio, D.C.S.D.N.Y.1954, 16 F.R.D. 268, 271. See for the latter case, *affirmance after conviction,* 2 Cir., 1956, 232 F.2d 589.

Although the Government has not filed a motion to quash these subpoenas, an affidavit in opposition has been filed and the matter has been thoroughly briefed and argued. Treating the affidavit as a motion to quash, it is granted.

■■■ Defendants Joseph Paradise and William Paradise move for subpoenas *duces tecum* under Fed.R.Crim.P. 17 (c) directing the Government to produce copies of testimony given in prior proceedings by Joseph Basile, a non-defendant co-conspirator, and Pierre Lafitte who is neither a defendant nor a conspirator but who is named in certain of the overt acts. Such prior testimony is not properly subject to subpoena since it cannot be evidence in this case, Bowman Dairy Co. v. United States, 1951, 341 U.S. 214, 219–220, 71 S.Ct. 675, 95 L.Ed. 879; United States v. Kiamie, D.C.S.D. N.Y.1955, 18 F.R.D. 421. Such testimony is a matter of public record, however, and with the consent of the Government, the Government is directed to permit inspection of such testimony which it may have in its possession, by counsel assigned by the Court for the indigent defendants.

■■■ Defendants Joseph Paradise and William Paradise also move for subpeonas directing the Government to produce at trial, for inspection immediately before each Government witness takes the stand, a list of that witness' convictions, if any, and a transcript of any testimony, in the possession of the Government, given by such witness in any former trial or proceedings. In addition to what was said above, I do not feel that the issuance of such a subpoena, at this time, would serve any useful purpose. The Government is directed, however, to have such materials available at the trial for production and inspection as and if ordered by the trial judge. See United States v. Sansone, 2 Cir., 231 F.2d

887, 892, certiorari denied, 1956, 351 U.S. 987, 76 S.Ct. 1055, 100 L.Ed. 1500.

3. *Rule 16 relief*. Defendants Samnick, Danis and Snyder seek drag-net relief under Fed.R.Crim.P. 16, the scope of inspection being as broad as that sought under Fed.R.Crim.P. 17(c) with the exception that it is limited to items obtained from the defendant or obtained from others by seizure or process. Included among the requested material are transcripts of all testimony or statements ever made by these defendants anywhere at any time. No particular statements or documents are specified.

Obviously, to the extent that the motions seek "all" papers, documents, etc., the movants are unable to show that the "items sought may be material to the preparation of [their] defense * * *." Fed.R.Crim.P. 16. United States v. Peltz, D.C.S.D.N.Y.1955, 18 F.R.D. 394, 403.

As an exercise of discretion, however, the defendants will be allowed to inspect any statements signed by them and which they may have given to the United States Attorney, United States v. Singer, D.C. S.D.N.Y.1956, 19 F.R.D. 90.

Defendant Samnick, one of the customs agents, has moved for production of his employment records. The Government, in this case, is here in a dual capacity. To the extent that the Government was the employer of three of these defendants they are entitled to inspection of those documents which are readily available and which reveal the dates of their employment and their work assignments during the period of the conspiracy. The Government may furnish this material either by abstract or by making the records available.

Defendants Joseph Paradise and William Paradise move for inspection of (1) a check and checkbook stub mentioned in one of the overt acts, and (2) any tangible objects which may be used in evidence against them and which were obtained from them or from others by seizure or process. The second part of the motion is denied for failure to make a showing of materiality. Fed. R.Crim.P. 16; United States v. Peltz, supra. As to the check and stub, there is no showing that these items were obtained from these defendants or that they were obtained from others by seizure or process.

Except to the extent set forth above, the motions for Rule 16 relief are denied.

4. Defendant Danis moves for an order "[d]irecting the prosecution to list, describe and otherwise specify each and every exhibit the prosecution now intends to introduce at the trial of the within indictment." For this extraordinary motion Danis cites no authority and I know of none. The motion is denied.

## V

### Motions for Severance

Defendants Brisbois, Danis, Joseph Paradise, William Paradise, Pierri, Samnick, and Snyder move for severance of their trials under Fed.R.Crim.P. 14, (Snyder's and Pierri's motions were oral.)[9] Danis' and Samnick's motions are partially based on prejudicial joinder of offenses and are denied, to that extent, for the reasons set forth in Part II of this opinion. Of course, if the evidence at the trial establishes multiple conspiracies, a different problem will arise. See Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557.

The motions for severance on the ground of prejudicial joinder of defendants present the task of fairly balancing the prejudice to the Government from separate trials against the prejudice to the defendants from a mass trial.

"Numbers are vitally important in trial, especially in criminal matters. Guilt with us remains individual and per-

9. Counsel for De Saverio joined in this motion during the oral argument but later withdrew his motion.

sonal, even as respects conspiracies. It is not a matter of mass application. There are times when of necessity, because of the nature and scope of the particular federation, large numbers of persons taking part must be tried together or perhaps not at all, at any rate as respects some. When many conspire, they invite mass trial by their conduct. Even so, the proceedings are exceptional to our tradition and call for use of every safeguard to individualize each defendant in his relation to the mass." Kotteakos v. United States, 1946, 328 U.S. 750, 772–773, 66 S.Ct. 1239, at page 1252.[10]

The problems confronting a defendant in a mass trial were vividly set forth by Justice Jackson in his concurring opinion in Krulewitch v. United States, 1949, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790. "When the trial starts, the accused feels the full impact of the conspiracy strategy. * * * [T]he accused often is confronted with a hodgepodge of acts and statements by others which he may never have authorized or intended or even known about * * *.

"The trial of a conspiracy charge doubtless imposes a heavy burden on the prosecution, but it is an especially difficult situation for the defendant. The hazard from loose application of rules of evidence is aggravated where the Government institutes mass trials. * * *

"A co-defendant in a conspiracy trial, occupies an uneasy seat. There generally will be evidence of wrongdoing by somebody. It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together. If he is silent, he is taken to admit it and if, as often happens, co-defendants can be prodded into accusing or contradicting each other, they convict each other. There are many practical difficulties in defending against a charge of conspiracy which I will not enumerate." 1949, 336 U.S. 440, 453–454, 69 S.Ct. 716, 723, (footnotes omitted). See also, United States v. Sing Kee, 2 Cir., 1957, 250 F.2d 236.

Balanced against these factors must be the prejudice to the Government, if severance is granted, in having its case revealed in the first trial for the benefit of those who will stand trial later. There is also the consideration that the defendants will be placed in unequal positions, with some gaining the advantage of disclosure of the Government's case and the possibility of witnesses' deaths and fading memories making proof of the charge ever more difficult.

Resolution of these conflicting interests is a matter within the sound discretion of the trial judge. E. g., Opper v. United States, 1954, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101. The factors bearing on such a decision are not sufficiently fixed at the pre-trial stage. Among those which will probably require consideration are the following: whether there can be an adequate rapport between the defendants and their counsel while the trial proceedings are being conducted;[11] whether the jury can recognize each of the defendants and learn their names from the beginning of the trial; whether the requirements of a fair trial will be frustrated by the sheer weight of the number of defendants in the sense that only a prodigious memory and a lively intelligence on the part of each juror can fit each segment of relevant evidence into its proper place. See United States v. Central Supply Ass'n, D.C. N.D.Ohio 1947, 6 F.R.D. 526, 533–535.

10. The trial court, in Kotteakos, even though the indictment charged but a single conspiracy, granted a severance to four defendants before trial and one during trial. 1946, 328 U.S. 750, 753, notes 3, 4, 66 S.Ct. 1239, 1242.

11. See U.S.Const. Amend. VI; Coplon v. United States, 1951, 89 U.S.App.D.C. 103, 191 F.2d 749, 757, certiorari denied, 1952, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690; cf. People v. Cooper, 1954, 307 N.Y. 253, 120 N.E.2d 813.

I am aware that mass trials have been conducted and held valid; see Comment, Federal Treatment of Multiple Conspiracies, 57 Col.L.Rev. 387, 404 n. 138 (1957) (seventy-five defendants); and that one has been held and disapproved. Id. at loc. cit. (seventy-six defendants). And, of course, the difficulties noted above can be attenuated by experienced trial counsel and by the trial judge's conduct of the case.

My reflection upon this vexatious problem has led me to this conclusion: The motions for severance should be denied at this time because they can be acted upon wisely only by the trial judge. Then only can a realistic appraisal of the appropriate considerations be made. It is not unlikely that some of the 46 defendants may plead guilty; that the Government may lose or gain witnesses or other proof, thus altering the Government's position on these motions; that some of the defendants may become Government witnesses, thus leading to a possible joinder by the Government in the motions for severance, at least as to them.[12]

Thus, if I were to order a severance now I would, under the circumstances, do so blindly, while the case is in its pre-trial stages and while counsel are just beginning to familiarize themselves with the law and the facts.[13] The knife of severance must be applied skillfully and with knowledge aforethought of the consequences; otherwise it becomes a bludgeon liable to prejudice the defendants or the Government indiscriminately.

In other words, the choice of which trials, if any, are to be severed, and whether the defendants who will stand trial should be tried in one, two, three, or more groups must be a conscious and intelligent choice, not a mere blind reduction in numbers or refusal to reduce. I am unable to make that choice at this time and I feel constrained to defer to the trial judge.

Accordingly, the motions for severance are denied without prejudice to their renewal before the trial judge.

Appropriate endorsements have been placed on the motion papers reflecting these decisions. Settlement of orders is not required except for the order granting discovery as set forth in Part IV, subd. 3 of this opinion, and the matter discussed in footnote 4. Appropriate orders should be noticed for settlement, accordingly, as to these matters.

So ordered.

12. A factor which may be of some relevance when the issue of severance is decided is the number of defendants in jail. At present five of the defendants are in State prisons and one in a Federal prison, serving sentences upon convictions unrelated to this case. I understand that three of these defendants may be released from prison within the next few months.

13. Six of the defendants are indigent and represented in this case by Court-appointed counsel. These counsel have only recently entered the case. The withdrawal of the motion for a severance noted in footnote 9, supra, came after appointed counsel had an opportunity to discuss this matter with his incarcerated client.