Bernice Elyse LANDERS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18962.

United States Court of Appeals
Fifth Circuit.

June 20, 1962.

John H. Goddard, Robert H. Smalley, Jr., Griffin, Ga., for appellant.

Charles D. Read, Jr., U. S. Atty., John W. Stokes, Jr., Asst. U. S. Atty., J. Robert Sparks, Asst. U. S. Atty., Atlanta, Ga., Charles L. Goodson, U. S. Atty., for appellee.

Before CAMERON and BELL, Circuit Judges, and CARSWELL, District Judge.

CARSWELL, District Judge.

Bernice Elyse Landers, who is appellant here, was jointly indicted, along with Dr. W. G. Dunbar, Howard Bright, and Forrest Poss for the offense of conspiring among themselves and with others, to violate the federal narcotics laws. In a separate count, the appellant, Dunbar and Bright were indicted for selling approximately four hundred ¼ grain tablets of morphine sulphate and 30 cc of demerol in each of 8 bottles in violation of Title 26 United States Code, § 4705.

Dr. Dunbar entered a plea of guilty before trial. Following the taking of testimony, the District Court entered a judgment of acquittal in behalf of Forrest Poss, and only the issues of the guilt or innocence of Howard Bright and the appellant were submitted to the jury. Both were convicted. Bernice Landers appeals her conviction on the conspiracy count and on the substantive count of selling narcotics asserting four errors.

█ Before reaching the merits of appellant's contentions, however, it is noted that during the course of the trial none of the matters raised in this appeal were called to the attention of the District Judge, through proper objection or otherwise. Under these circumstances the applicability of Rule 51, Federal Rules of Criminal Procedure, 18 U.S. C.A.,[1] may well be raised. As recently stated by Chief Judge Tuttle in Thomas v. United States, 287 F.2d 527 (5th Cir. 1961), "The strength of the case made against the accused by the government is commented on in light of the fact that

---

1. "Rule 51. Exceptions Unnecessary
    "Exceptions to rulings or orders of the court are unnecessary and for all purposes for which an exception has heretofore been necessary it is sufficient that

a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and the grounds

under familiar rules Courts of Appeals do not review actions of omission or commission by a trial court unless the accused 'makes known to the court the action while (sic) (which) he desires the court to take or his objection to the action of the court and the grounds therefor.' " Accord Self v. United States, 249 F.2d 32 (5th Cir. 1957); Matthews v. United States, 217 F.2d 409, 50 A.L.R.2d 1187 (5th Cir. 1954).

Counsel retained by appellant for this appeal, accepting as must be done, the burden of these lessons, urges, nevertheless, that four errors made in the trial court are each of such nature as require reversal under the plain error rule, Rule 52(b)[2], Federal Rules of Criminal Procedure.

The nature of the case and these contentions require a thorough examination of the entire record as it relates to the individual specifications of error.

The first of these contentions has to do with certain testimony of government agent Jessup, who was called as a witness early in the trial of the case. Jessup explained his role as an undercover agent, told how Poss had introduced him to Bright and how Bright had led him to Dunbar. He then proceeded to relate, without objection, a conversation which he had with Dunbar, in which Dunbar told him about Landers' involvement in the narcotics scheme. Up to this point in the testimony, no word had yet been said about Bernice Landers; at that point in the trial there was no independent testimony linking her to the conspiracy. For this reason, the appellant here urges that error was compounded twofold in allowing that part of Jessup's account touching on Landers: first, she says, because the statement not made in her presence made by Dunbar, alleged co-conspirator, may only be admitted in evidence if such statement was made while the conspiracy was pending and while the defendant was a member of the conspiracy. Appellant contends that there never was in the entire trial any testimony fulfilling this test and that, therefore, the testimony of Jessup was inadmissible under any theory at any point in the trial. ·

We cannot agree. This record is heavy with evidence to the contrary.

Dr. Dunbar's conversation with the agent in which he referred to Landers took place in his automobile at about four o'clock on February 16. Arrangements were made to meet that night at nine o'clock at the restaurant operated by Landers. The agents went to the restaurant, and Landers told them that Dunbar had called and would be there shortly. Upon Dunbar's arrival he introduced Landers as a woman who "knows how to keep her mouth shut."

The agents sat at a table discussing narcotics transactions with Dunbar, during which time Landers joined the group. Landers produced a bottle containing morphine which the evidence showed she had placed in her personal living quarters in the rear of the restaurant. One of the agents asked if 500 tablets of morphine which he had purchased four days earlier had come from this same bottle. He was advised that they had. Clearly, this alone was sufficient to predate her participation in the conspiracy by at least four days prior to the time that Dunbar made his statement of Landers' connection with the narcotics scheme on February 16.

There is more. She was present when Dunbar stated that she had "been in this thing from the start", and there is substantial evidence that the planning of large sales of illegal narcotics had started many months prior to that time.

And then the record carries an account of what can only be characterized as bickering by appellant over the going

therefor; but if a party has no opportunity to object to a ruling or order, the absence of an objection does not thereafter prejudice him."

**2.** "Rule 52(b). Plain Error.
"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

price of illicit drugs compellingly suggestive of some considerable expertise in this field on her part and not likely to have been acquired from only a few days or a few hours involvement.

Finally, and without reviewing all the testimony in this regard, the record shows that Dunbar stated in her presence that he and Miss Landers had been planning this operation for approximately eight months, that they were going to build a hospital as a front for their narcotics activity and for other illegal activities, that he met her about a year before, and that they had been planning the thing for about eight months.

With all this certainly we cannot agree with appellant that there was no independent evidence of the existence of the conspiracy or that there was no independent evidence linking her to it well in advance of Dunbar's conversation with the agent on February 16.

But, appellant says, even though this be so, this same testimony of Dunbar's conversation with Jessup was not admitted in proper order of proof; that the independent evidence of her participation in an existing conspiracy should have come first. Only then, the contention runs, should the statement of Dunbar, as a co-conspirator, have been allowed to be considered by the jury against her.

Appellant has the authority of Nibbelink v. United States, 66 F.2d 178 (6th Cir. 1933), in support of this proposition, but we think the majority and contrary rule is the better one as stated in United States v. Sansone, 231 F.2d 887 (2d Cir. 1956), certiorari denied 351 U.S. 987, 76 S.Ct. 1055, 100 L.Ed. 1500. The Nibbelink opinion states:

"Before the declarations of coconspirators can be received in evidence against one charged with participating in the conspiracy, it must be shown by independent evidence that the conspiracy existed and that the accused was a party to it at the time the declarations were made." Immediately following this quotation several cases are cited. These cases are set forth in footnote below,[3] but a careful examination of each one of them discloses no support whatever for the proposition. Our examination of the cases supports the contrary view.

After reviewing the basic prerequisites for the use of declarations of a co-conspirator the Court in Sansone, supra, 231 F.2d at pages 892–893, sustained the admission of such declaration in a factual situation closely comparable to the instant case and said: "Nor does it make any difference that when the evidence concerning the sale of July 3 was introduced, the prosecution had not yet proved appellant's connection with the conspiracy. The order in which evidence is received is within the discretion of the trial court." Cases were then cited and are set forth in footnote below.[4]

■■ We cannot say, of course, what ruling the trial judge might have made had he been presented with a timely objection to Jessup's testimony. Plainly it would have been within his discretion to require the government to come forward with some independent evidence concerning this particular defendant, Bernice Landers, before allowing Jessup to resume his chronological narration of Dunbar's statement about her. In the course of a trial involving several defendants and more than one charge the order of proof may well raise questions of utmost significance in presenting a record for

3. Winchester & Partridge Mfg. Co. v. Creary, 116 U.S. 161, 166, 6 S.Ct. 369, 29 L.Ed. 591; Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 249, 38 S.Ct. 65, 62 L.Ed. 260, L.R.A.1918C, 497, Ann. Cas.1918B, 461; Minner v. United States (C.C.A.10) 57 F.2d 506, 507, 509; United States v. Renda (C.C.A.2) 56 F.2d 601, 602; Kuhn v. United States (C.C.A.9) 26 F.2d 463.

4. United States v. Pugliese, 2 Cir., 1945, 153 F.2d 497, 500; Cohen v. United States, 2 Cir., 1907, 157 F. 651, 655, certiorari denied 207 U.S. 596, 28 S.Ct. 261, 52 L.Ed. 357; Hoeppel v. United States, 1936, 66 App.D.C. 71, 85 F.2d 237, 242, certiorari denied 299 U.S. 557, 57 S.Ct. 19, 81 L.Ed. 410; rehearing denied 299 U.S. 622, 57 S.Ct. 188, 81 L.Ed. 458.

the jury and for the court which is both intelligible and scrupulously fair to each defendant. In some cases an appropriate instruction to the jury, at the moment, may be indicated. The variety of situations thus encountered are countless beyond imagination, and there cannot be forged, we think, so fixed a pattern, so inflexible a cast as to dictate a precise method of proof, requiring the order of presentation to be spun out in ritualistic unreality to the complete obfuscation of jurors and judges alike. Each instance presents itself to the discretion of the trial judge to determine what is fair and what is intelligible within the context of the trial as a whole. Here the government's presentation was in straight chronological order, each event, in the main, unfolding by the clock and the calendar. This framework is perhaps most frequently encountered in any reenactment of events and we may suppose this to be so because it is simply easier for the listener to follow. In essence what appellant contends for here is to chronicle the tale *in media res*, lest the prelude of Dunbar's conversation become the nub of Landers' conviction to the ears of the listening jurors. The able and experienced trial judge here demonstrated on this record his appreciation of the necessity for a scrupulously fair trial for each defendant throughout the developing record. The instructions to the jury as to its approach to its task at the close of all the testimony were correct and adequate in every way. Certainly we cannot say the district court abused its discretion by allowing the Jessup-Dunbar conversation to come before the jury without objection when and how it did.

The next contention of appellant is that she was illegally arrested without a warrant, and that thereafter a search was illegally made of her living quarters behind the restaurant. There the agents found contraband morphine in a bottle, as well as a $50.00 marked bill. She urges that the court erred in admitting into evidence the bill and the bottle of morphine. There was no motion to sup-

press this evidence obtained by virtue of the search. The bill and bottle were introduced and received in evidence without objection. We shall examine the circumstances which led to the arrest, to determine if there was such plain error that we should grant relief despite the absence of such objections or motion.

At the time of the sale of the narcotics in the restaurant, the agents saw the appellant take a bottle of morphine from her dresser drawer. They saw her put the bottle back there after Dunbar had handed some of the tablets to the agents. They saw her receive some of the money which they had paid to Dunbar. The agents had thus participated in a face to face sale of narcotics with Landers as an active participant. They later made arrangements with Dunbar to purchase more narcotics and were told by him that Landers had 100 additional morphine tablets in her possession and that they could get this from her. Parenthetically, it may be noted that this particular conversation was not subject to the objections raised on the first question already discussed here. Without more, it is clear that there was probable cause to arrest appellant.

The agents, however, were fortified with additional and statutory support of their actions in making the arrest. Title 26 United States Code, § 7607, gives narcotics agents authority to make arrests without warrant for violations of narcotics laws when the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed such violation. From what has been recounted already, this statute was applicable as competent authority to arrest without warrant. It is basic that where an arrest is legal, a reasonable search incident thereto may be made without a search warrant. It seems reasonable that after arresting her the agents would look in the dresser drawer in appellant's room where they had previously seen her place narcotics. United States v. Rabinowitz, 339 U.S. 56, 70

**582**

S.Ct. 430, 94 L.Ed. 653 (1950). Whether timely motion to suppress was made or not, the District Court did not err in admitting evidence thus obtained.

The remaining specifications of error are directed to three aspects of the court's charge to the jury, two as to what was included and one as to what was not.

In the first portion under scrutiny the court charged: "Now, if after the existence of the conspiracy the alleged indictment has been established, *if* you find that it has been established, *then* evidence as to the act and declaration of any conspirator made in pursuance of the conspiracy and during its life is admissible and may be considered by you against all others who may be shown to have been co-conspirators." (Emphasis ours)

■ Appellant reads this to mean that the jury was free to consider declarations of a co-conspirator against appellant to establish the conspiracy and her connection with it. We do not so understand it even though read in the loneliness of its truncated state. Further doctoring on the emphasized words would be required to make this a valid interpretation, and thus reversible error. From verbal tense to phrase arrangement the quoted excerpt of the charge correctly conditions the consideration by the jury of acts and declarations of co-conspirators upon the establishment of the conspiracy and the appellant's connection with it. When this particular sentence is returned to its larger and more meaningful existence within the context of the court's full charge, the appellant's objections about them are scarcely identifiable as such and lose all force of reason. There is no indication that the jury was misguided or confused about its approach to its ultimate verdict. From it all it is clear the jury was told that the government had the burden of establishing by the reasonable doubt standard: (1) that the conspiracy must be found, and (2) that the appellant must be connected with it before consideration of acts or declarations of co-conspirators. Indeed, as noted before in this opinion in another context, the force and meaning of the court's instructions to the jury were clear, accurate and full.

■ Finally, the appellant contends that the court erred in failing to charge the jury on the law of entrapment. Here again, no request was made for the court to make such a charge. In fact even if such a charge had been requested, it appears to us that there is no evidence in the record relating to Landers which would have confronted the court with reason to give instructions on the law of entrapment. There is no suggestion on the record that Landers was induced in any way to sell narcotics to the agents. Her relationship throughout was with Dunbar, and she acted on instructions from Dunbar. The evidence does not support appellant's contention as to the requirement of a jury instruction on entrapment. See Rodriguez v. United States, 227 F.2d 912 at 914 (5th Cir. 1955); and United States v. Lile, 290 F.2d 225 (6th Cir. 1961).

Finding no error in this record the judgment of the District Court is accordingly

Affirmed.