**UNITED STATES of America,**
Appellee,

v.

**Ada VOLKELL, Defendant-Appellant.**
**No. 80, Docket 24664.**

United States Court of Appeals
Second Circuit.

Argued Oct. 9, 1957.

Decided Jan. 13, 1958.

John C. Lankenau, Asst. U. S. Atty., Southern Dist. of New York, New York City (Paul W. Williams, U. S. Atty., Robert Kirtland, Asst. U. S. Atty., Southern Dist. of New York, New York City, on the brief), for appellee, United States of America.

Robert Mitchell, New York City, for defendant-appellant, Ada Volkell.

Before CLARK, Chief Judge, and LUMBARD, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Appellant Volkell has been convicted of violations of the narcotics laws under four counts of an indictment charging her with the sale and possession of heroin and a conspiracy to traffic in heroin. The four counts involved are: Count 11, charging an illegal sale of heroin on November 16, 1956; Count 12, charging the appellant and Joseph Ambrosini with possession of 8½ ounces of heroin on November 16, 1956; Count 13, charging possession by appellant and Ambrosini of of 8½ ounces which had not been registered and on which the registration tax had not been paid; and Count 14, charging a conspiracy between the appellant, Ambrosini, Carrenza Howard, and many other co-conspirators to violate the narcotics laws.

Commencing in October 1955 and continuously thereafter Ambrosini, a co-defendant, had been selling heroin to Howard, a co-conspirator, with increasing frequency. In September 1956 a narcotics agent met Howard and told him that he would like to obtain an ounce of heroin. Howard ordered the heroin from Ambrosini which Howard later delivered to the agent. Thereafter the agent placed further orders through Howard.

At the outset Ambrosini used his car as the place of delivery to Howard. Subsequently, suspicious that they were being followed, they arranged a hiding place for deliveries. Payment, which at first had been direct, was made through a tailor in a tailor shop and eventually Howard employed a man named Murphy to act for him in picking up the narcotics.

The last delivery place fixed by Ambrosini was the second or third floor window ledge in the stairwell of an apartment building at 496 East 189th Street, Bronx, N. Y. Both Howard and his pickup man, Murphy, received deliveries of heroin at this location.

During September 1956 appellant had been with Ambrosini and Howard in the former's car. On November 9, 1956 Howard was arrested and agreed to cooperate with the narcotics agents. Through him they learned that the narcotics were being left at 496 East 189th Street but they did not know that appellant lived in an apartment there. However, early in the morning of November 16, 1956, narcotics agents observed Ambrosini and appellant enter the building, walk to the fifth floor and enter apartment 25–E. The afternoon of the same day, during a telephone call from Ambrosini, Howard told him that he wished to purchase two ounces of heroin. A short time later Ambrosini informed Howard that the heroin would be on a window ledge in the stairwell at 496 East 189th Street. Receiving this information, agents proceeded to the building, searched the window ledges, but found nothing. One agent remained on the stairs above the fifth floor and observed appellant leave her fifth floor apartment, heard her walk down two flights, and saw her return and re-enter apartment 25–E. Immediately thereafter another agent discovered two glassine envelopes containing heroin on the window ledge of the third floor landing. At this point the four agents who were in or about the building divided their forc-es, two agents going to the roof of the building and two agents stationing themselves at the door of apartment 25–E. The agents on the roof then walked down the fire escape, entered apartment 25–E through an open window, found appellant and Ambrosini in the bedroom, and placed them under arrest. A search of the apartment ensued and disclosed in the closet of the bedroom a suitcase containing 4½ ounces of heroin, mannite, milk sugar, strainers, a sieve, glassine envelopes, staples, paper bags, a scale and a revolver. There were also certain articles of apparel, including a white leather coat which appellant admitted belonged to her, in one of the pockets of which was a brown paper bag containing two ounces of heroin. When questioned by the agents appellant admitted that the apartment was occupied by her and that she paid the rent assisted by Ambrosini. Ambrosini admitted that he assisted with the rent; that appellant was his girl friend; and that he spent three to four nights a week there.

Ambrosini was found guilty on five counts, a defendant Shackelford was convicted of conspiracy and the jury disagreed as to defendant Mary Lou Russano.[1] The trial lasted for twelve days and at the conclusion the trial judge delivered a fair and comprehensive charge accurately covering the law as to conspiracy and the substantive counts. No error is assigned to the judge's charge.

Appellant relies entirely on appeal upon the arguments: (1) that the search of her apartment at the time of her arrest without a warrant of arrest and a search warrant was illegal and that the articles found should have been suppressed; (2) that the admission of testimony as to a gun in the suitcase was such reversible error that the trial court's instructions could not have cured it; and (3) that she was denied the right to inspect reports of the narcotics agents.

■■ Under the 1956 amendment to the narcotics laws Congress authorized

1. In a separate trial involving the same conspiracy other defendants were convicted. United States v. Carminati, 2 Cir., 1957, 247 F.2d 640.

narcotics agents to make arrests without warrant "where such person [the agent] has reasonable grounds to believe that the person to be arrested has committed or is committing such violation" (26 U.S.C.A. § 7607(2)). The scope of the word "reasonable" must be construed in relation to the safeguards granted in the Fourth Amendment to the Constitution "against unreasonable searches and seizures." Obviously, what is "reasonable" must be judged against a background of the facts known to the particular agent at the time of the arrest. The arrest of Ambrosini and Volkell was made by agents Hunt and Mendelsohn in the afternoon of November 16, 1956. By this time it was well known to the agents that Ambrosini had been a source of supply of heroin for some time but up to the time that appellant left her apartment, proceeded two flights downstairs, returning immediately, she had not been observed by the agents as being connected with the possession or delivery of heroin. Nor had the agents until earlier that same day seen appellant and Ambrosini enter apartment 25–E. Ambrosini's delivery of heroin early in the morning of November 16th to co-conspirator Howard had not been at the apartment but in Ambrosini's car. However, when Ambrosini returned to apartment 25–E early in the afternoon of November 16, 1956 they had the benefit of the cumulative effect of items of proof which strongly pointed to a joint participation by Ambrosini and appellant in the possession and delivery of narcotics from apartment 25–E. Both were known to be in the apartment and unless the agents' investigations and surveillances were possibly to be frustrated they had to act at once. To have returned later with a warrant might well have found Ambrosini and heroin gone. The observed duration of his previous visit had been only about five minutes. The agents had reasonable grounds to believe that appellant and Ambrosini had committed violations of the narcotics laws before their entry into the apartment. The grounds upon which the agents acted more than satisfied the requirements of section 7607(2). The search thereafter was incidental to lawful arrest.

Furthermore the motion made upon February 28, 1957, the third day of the trial, was not timely. Appellant was arrested on November 16, 1956 and was fully aware of all of the facts relating to the search and seizure from that day on. Denial of the motion "on both the merits and the timeliness" was proper (United States v. Sheba Bracelets, Inc., 2 Cir., 1957, 248 F.2d 134; United States v. Allied Stevedoring Corp., 2 Cir., 1957, 241 F.2d 925, 931, certiorari denied 353 U.S. 984, 77 S.Ct. 1282, 1 L.Ed.2d 1143; United States v. Chieppa, 2 Cir., 1957, 241 F.2d 635, 638, certiorari denied 353 U.S. 973, 77 S.Ct. 1057, 1 L.Ed.2d 1136, sub nom. Ivicola v. United States; United States v. Sansone, 2 Cir., 1956, 231 F. 2d 887, 892, certiorari denied 351 U.S. 987, 76 S.Ct. 1055, 100 L.Ed. 1500; United States v. Salli, 2 Cir., 1940, 115 F.2d 292).

After the arrest and in the course of the search attendant thereto, a coat belonging to appellant, in a pocket of which were two ounces of heroin, and a suitcase were found in a closet of the bedroom. Appellant asserts as reversible error the mention of a revolver as one of the articles in the suitcase.

An honest and accurate statement of articles found on the premises at the time of the arrest was necessary to present a true word picture of the scene as observed by the persons present. Some courts have admitted evidence as to other articles found at the time of the search as constituting "part of the res gestae" (United States v. Freeman, 7 Cir., 1953, 203 F.2d 387, 389). See also Crapo v. United States, 10 Cir., 1939, 100 F.2d 996, 1001. In United States v. Penn, 7 Cir., 1940, 115 F.2d 672, 674, the court said "It was clearly proper to permit the police officer to name all of the articles which were found in the closet for the purpose of disclosing fully the circumstances surrounding the discovery of the gun."

Failure to require accurate statements might well lead to more serious problems. To give to law enforcement agents discretion to reveal only such articles as they deem relevant might well bestow judicial powers upon them inconsistent with, and adverse to, the interests of justice and a fair trial.

Apart from admissibility as a matter of law the government argues that defense counsel were responsible for any mention of the revolver. The record discloses that the agent testified as to the contents of the suitcase which were related to narcotics and stopped. The prosecutor then asked the agent to open the suitcase whereupon defense counsel interrupted, saying, "Has he finished his answer?" As a result of another proceeding defense counsel knew that there had been a revolver in the suitcase and the prosecutor knew that defense counsel knew this. A fair surmise would be that defense counsel was inferring that the government and the agent were trying to conceal some of the contents and would use such concealment to attack the agent's credibility. This surmise is strengthened by the fact that defense counsel engaged in these very tactics by such questions as: "Q. But you didn't give us that information because you weren't asked, you say?", "Q. Did you have any purpose in concealing that fact from this jury?", and "Q. Were you trying to tell this jury the whole truth?"

The prosecutor had tried to avoid the issue and told the court at the bench out of the hearing of the jury "I specifically instructed him before the trial not to make any mention of anything, to make no mention of the fact there was a gun in the suitcase." After the disclosure of all the contents except the gun, defense counsel must have known that the agent's answer was finished with this one exception. His question was an invitation to complete it and there is no basis for defense counsel's statement that it was brought out "by his [the prosecutor's] urging." Since the defense, in effect, was responsible for bringing out this evidence appellant cannot be heard to

complain of the answer especially where counsel knew that a gun was a part of the contents. By his question he implied that the enumeration of the contents was incomplete and must have known of the answer he was likely to receive (United States v. Apuzzo, 2 Cir., 1957, 245 F.2d 416, 420). Moreover, the court immediately after the bench conference instructed the jury that only the articles relating to the heroin were involved and "to disregard anything with respect to the gun."

█ Finally, appellant assigns as error an alleged denial of the right of inspection by her counsel of certain agents' reports. She argues that impeachment of the agents was her only defense. The record does not sustain her claim of error. When the memorandum was first mentioned defense counsel said, "May I see the copy, please, or produce it for the Court?" The court directed the prosecutor to bring it in. Later counsel said, "I now call upon the United States Attorney to produce those copies of those memoranda for the examination by the Court" and "I asked your Honor to examine the reports of all of the witnesses who testified here, and if the situation requires, that they be recalled." Fourteen sheets of reports were marked Court's Exhibit 1 for identification and handed to the court, defense counsel saying, "I ask your Honor to examine the reports * * *" Thereafter the court stated that he had examined the exhibit and that "I find, in my opinion, there is nothing inconsistent with this witness' testimony." Other reports were produced and marked Court's Exhibits 2, 3 and 4 for identification. The court examined all reports, consisting of thirty sheets, and stated that he did not "find anything which is inconsistent with the testimony of McDonald, Hunt or Georgio." The jury had been excused when these findings were announced and no objection to this procedure was made. No occasion arises, therefore, for the application of the Jencks doctrine (Jencks v. United States, 1957, 353 U.S. 657, 77 S. Ct. 1007, 1 L.Ed.2d 1103). If defense

counsel choose to be advised by the court out of the presence of the jury that there is nothing in the report inconsistent with the testimony of the witness who made the report, neither trial nor appellate court should try to direct their trial tactics. Were the court to insist that defense counsel see and examine the reports and if, thereafter, they were not used to impeach, there would arise the natural inference in the minds of the jury (certainly arguable by the prosecutor) that the witness' testimony was accurate. If, having the reports in court, defense counsel elected to have the court examine them, no error was committed by the trial court in following this procedure.

The judgment is affirmed.