Louie ROSEN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18699.

United States Court of Appeals Fifth Circuit.

Sept. 1, 1961.

Wesley R. Asinof, Atlanta, Ga., for appellant.

Charles D. Read, Jr., U. S. Atty., J. Robert Sparks, Asst. U. S. Atty., John W. Stokes, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellant, Louie Rosen, and his wife, Wanda J. Rosen, were indicted for the offense of accepting wagers and conducting a lottery for profit without having paid the tax required by 26 U.S.C.A. § 4411, in violation of 26 U.S.C.A. § 7203. They were charged in a second count of the indictment with being in the business of accepting wagers and conducting a lottery for profit without having registered as required by 26 U.S.C.A. § 4412, in violation of 26 U.S.C.A. § 7203. The appellant was convicted on both counts. His appeal from the conviction is before us.

A search warrant was issued on the affidavit [1] of Robert C. Joyner, who was a

---

[1]. "I have known Louie Rosen, alias 'Nerp' Rosen, 945 Carmel Avenue, N. E., Atlanta, Georgia, for a number of years by reputation as a bookmaker and associate of gamblers. On or about November, 1959, and on or about April, 1960, I received confidential information considered reliable that 'Nerp' Rosen was booking bets at 945 Carmel Avenue, N. E., Atlanta, Georgia. On April 21, 1960, and on prior dates, I checked records to the Southern Bell Telephone and Telegraph Company, Atlanta, Georgia, and determined that during the period February 11, 1960, through April 12, 1960, more than 250 long distance telephone calls were made from and/or to JA 4–2382, the telephone of Louie Rosen, Atlanta, Georgia, located at 945 Carmel Avenue, N. E., Atlanta, Georgia. Among these telephone calls were numerous long distance calls either to or from the following numbers in the listed cities:

Birmingham, Alabama
TR 9–0401    TR 9–0402
Chattanooga, Tennessee
TA 1–6500    TA 1–8312    AM 6–9876
TA 1–7547    AM 5–3928    MA 4–6533
Mobile, Alabama
HE 2–9797    HE 2–4911

"Records of the Southern Bell Telephone & Telegraph Company, Atlanta, Georgia, and of the Chief, Intelligence Division, Wagering Section, Atlanta, Georgia, were checked, and the following information determined:

"TR 9–0401 and TR 9–0402, Birmingham, Alabama, are telephones installed in a residence located at Route 13, Box 778, Birmingham, Alabama, and are the telephone of Maurice Daniel Dodson, d/b/a Superior Sports Service, Inc. Dodson is a registered gambler holding a wagering tax stamp purchased from the District Director, Internal Revenue Service, Jackson, Mississippi. One of the addresses listed in his application was Route 13, Box 778, Birmingham, Alabama. Maurice Dodson is known to me by reputation as one of the largest bookmakers in the southeast.

"Chattanooga, Tennessee: TA 1–6500 is the telephone of William W. Champion, Shingle Road, Lookout Mountain, Chattanooga, Tennessee. Champion claims to be the owner of the Hickory Products Company, Onita, Tennessee. Records of the Chief, Intelligence Division, Atlanta, Georgia Wagering Section, reveal that Champion is in fact a well-known gambler and bookmaker in the Chattanooga area. TA 1–7547 is the telephone of Miss Mary Champion, Shingle Road, Lookout Mountain, Chattanooga, Tennessee. The responsible person for this telephone is the above William W. Champion. TA 1–8312 is the telephone of W. Cliff Whitsell, alias W. C. Whitesell, Route 4, St. Elmo, Chattanooga, Tennessee. Whitsell, alias Whitesell, is known to the Intelligence Division as a bookmaker who formerly worked for W. E. Alley, Chattanooga, Tennessee, a known bookmaker. He is now working for W. Condon Graham, Dayton, Tennessee. W. Condon Graham is known to me as the operator of a large scale bookmaking organization and is a former Federal Wagering Tax Stamp holder. AM 5–3928 is the telephone of G. W. Roper, 622 Cherry St., Chattanooga, Tennessee. Roper claims to be an accountant but is known to the Intelligence Division as a bookmaker. AM 6–9876 is the telephone of the Victory Bar, operated by J. E. Oakley, 622 Cher-

Special Agent in the Intelligence Division of the Internal Revenue Service. The affidavit and the search warrant were dated April 27, 1960. On the afternoon of that day agents of the Internal Revenue Service, accompanied by police officers of the City of Atlanta, Georgia, made a search of the premises described in the affidavit and warrant. This was a dwelling in the City of Atlanta occupied by the appellant, his wife and their two children.

The search, which lasted from two until five in the afternoon, produced a number of papers which were introduced in evidence. One of these was identified as a recap or summary sheet of bets received showing twelve bettors with losses of $2,800 and wins of $3,266. There were two papers which were identified as collection sheets bearing the symbols of bettors, amounts of the bets, and the odds of the bets. One of these was under the table cloth on a kitchen table. The search disclosed and the court received in evidence telephone bills and cancelled checks in payment for telephone service for the period of September, 1959, to May, 1960. Proof was made that during the May to September period 929 long distance calls were made to or received from telephones in Chattanooga, Tennessee, Birmingham, Alabama, or Mobile, Alabama, at addresses of persons who were registered as gamblers under the

federal law. Before the search was completed Mrs. Rosen was placed under arrest and was taken from the dwelling by some of the officers. The other officers continued the search and the appellant came in as the search was being finished about five o'clock. The appellant was then placed under arrest. In response to the officers' questions he stated that he had formerly worked as a dealer in Tennessee and in Georgia, but had been unemployed for a year. On being asked about the long distance calls, he said that he frequently made calls to friends in other localities just to pass the time of day, and on some occasions when he was indisposed he made telephone calls that he didn't even remember making.

Such, in summary, was the Government's case. When the Government rested, a motion was made for the suppression of all of the evidence which was the result of the search and for a judgment of acquittal for each defendant. The motion to suppress was overruled. The motion to acquit Mrs. Rosen was granted. The motion to acquit the appellant was denied. The jury found the appellant guilty on both counts. On the first count he was given a nine months' prison sentence and on the second count he was given a fine of fifty dollars.

■■ The appellant urges that the motion to acquit should have been granted because of the rule announced in

---

ry Street, Chattanooga, Tennessee. The Victory Bar is known to the Intelligence Division as an establishment frequented by gamblers and bookmakers. MA 4-6533 is the telephone of Fred Gill, 402 Talley Road, Chattanooga 4, Tennessee. Gill is known to the Intelligence Division as a gambler and bookmaker.

"Mobile, Alabama: HE 2-9797 is the telephone of the Norman Billiard Parlor, 7 North Jackson, Mobile, Alabama. The Norman Billiard Parlor is operated by William McCoy. William McCoy is known to the Intelligence Division as a bookmaker and is a holder of a current Special Occupational Tax Stamp-Wagering. HE 2-4911 is the telephone of R. W. Konkel, 960 Dolphin Street, Mobile, Alabama. Konkel is unknown to the Intelligence Division.

"From my experience as a Special Agent investigating wagering activities of bookmakers, I believe that Louie Rosen, alias 'Nerp' Rosen, is conducting a bookmaking operation at 945 Carmel Avenue, N. E., Atlanta, Georgia.

"On April 27, 1960, I personally checked the records of the District Director, Internal Revenue Service, Atlanta, Georgia, and determined that Louie Rosen, alias 'Nerp' Rosen, has not registered as a gambler and has not purchased the required Special Occupational Tax Stamp-Wagering. No person has registered as a gambler operating at 945 Carmel Avenue, N. E., Atlanta, Georgia, nor purchased the required Special Occupational Tax Stamp-Wagering, for that address."

United States v. Calamero, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394, where it was held that Congress did not choose to subject all employees of gamblers to the tax and reporting requirements of the statute, but was content to impose them on persons actually engaged in receiving wagers. While conceding that the evidence showed that bets had been made, the appellant contends that it does not establish that he had made them. The records of gambling transactions showing wagers received, the telephone calls to and from registered gamblers, and the other circumstances made a case for the jury. The Calamero case is not in point.

 The ruling of the Court on the motion to suppress the evidence procured by the search is made the basis of a specification of error by the appellant. The rule provides that the motion to suppress shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing. Rule 41(e) Fed.Rules Crim.Proc., 18 U.S.C.A. No motion to suppress was made on behalf of the appellant until after the Government had completed its testimony and rested its case. No effort was made to show that opportunity did not exist for making the motion before trial or that the defendant was unaware of the grounds for the motion. No reasons were given at the trial or on appeal as to why the court should, by an exercise of discretion, permit the motion to suppress to be made after the seized evidence had been admitted without any objection being made on the ground that there had been a wrongful search. No reason appears why the motion to suppress could not have been made before trial. There was no abuse of discretion in refusing to grant the motion at the time it was made. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Segurola v. United States, 275 U.S. 106, 48 S.Ct. 77, 72 L.Ed. 186; United States v. Volkell, 2 Cir., 1958, 251 F.2d 333, certiorari denied 356 U.S. 962, 78 S.Ct. 1000,

2 L.Ed.2d 1068; United States v. Romero, 2 Cir., 1957, 249 F.2d 371; Sandez v. United States, 9 Cir., 1956, 239 F.2d 239, rehearing denied 245 F.2d 712; United States v. Sansone, 2 Cir., 1956, 231 F.2d 887, certiorari denied 351 U.S. 987, 76 S.Ct. 1055, 100 L.Ed. 1500; Braswell v. United States, 10 Cir., 1955, 224 F.2d 706, certiorari denied 350 U.S. 845, 76 S.Ct. 86, 100 L.Ed. 752.

A separate specification of error questions the admission of telephone bills and cancelled checks which were obtained by the search, on the ground that they were not contraband and were not described in the search warrant. That which has been said disposes of this question. It might be also said that the court asked appellant's counsel, when these exhibits were tendered, if he had any objection and the answer was, "no objection."

There is no reversible error. The judgment of the district court is

Affirmed.