UNITED STATES of America,
Appellee,

v.

Max PLATT, Defendant-Appellant.

No. 304, Docket 35252.

United States Court of Appeals,
Second Circuit.

Argued Oct. 30, 1970.

Decided Nov. 24, 1970.

Jay S. Horowitz, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., and Harold F. McGuire, Jr., Asst. U. S. Atty., of counsel), for appellee.

Lloyd A. Hale, New York City (Louis Bender, New York City, of counsel), for defendant-appellant.

Before MOORE, FRIENDLY and ADAMS,* Circuit Judges.

FRIENDLY, Circuit Judge:

Max Platt, sole owner of a pharmacy in Mamaroneck, N. Y., appeals from his conviction, after a jury trial in the District Court for the Southern District of New York, of the misdemeanor of willfully failing to file his personal income tax returns for 1963 and 1964 "at the time or times required by law or regulations," 26 U.S.C. § 7203. The returns were not filed until April 1966, long after extensions proved to have been granted by the Internal Revenue Service had expired. The only issue of substance was whether the failure to file the returns when required was willful.

From about 1939 until mid-1960 Platt was a client of a New York City accounting firm, Knopf, Raeman & Tepper. A representative of the firm would make quarterly visits to the pharmacy, where the accountant would audit and write up the store's books of account, and then prepare payroll and sales tax returns. After the close of the year, the firm would prepare personal income tax returns, which were presented for Platt's signature along with appropriate checks. During this long period all Platt's Federal income tax returns were filed by the due date or within an extension granted by the I.R.S.; indeed the Government so stipulated with respect to the years 1950–59.

In mid-1960 the accounting firm was dissolved. Raeman, who continued to maintain his office with the former partnership, was assigned various accounts, including Platt's, but was no longer under Knopf's supervision. It is unclear whether Platt was made aware of the change.

The 1960 federal income tax return was not filed until October 17, 1961, although there was no proof of extensions beyond August 15.[1] That was a minor peccadillo compared with what was to come. The returns for 1961 (not a subject of the indictment), 1962 (as to which the jury acquitted, rather unaccountably in light of its verdict for the two later years), 1963 and 1964, were not filed until April 1966.[2] Late in 1965, Knopf, who was a close personal friend of Platt's, visited the pharmacy to suggest that Platt sell it or take in a partner, because the store was open seven days a week and "Mr. Platt, in my judgment, found it awfully difficult to contend with." When Knopf's request for the pharmacy's general ledger and the information which it should have contained revealed that neither was available, he discovered the failure to file income tax returns for the years 1961–1964. Knopf thereupon initiated action intended to cure the defaults by calling Raeman and telling him to "[g]et those books written up and get tax returns prepared immediately." During the same period, the I.R.S. for the first time sent Platt a letter concerning his delinquency.[3] After some delay due to Platt's hospitalization, Raeman prepared the long overdue returns, and these were filed in April 1966. Although the returns showed liabilities of $17,690.44 for 1963 and $19,803.08 for 1964, Platt made only token payments of $250 for each year. With this and other evidence the Government had a strong case.

Platt's principal defense was that he had relied on Raeman to keep him in compliance with the law and therefore lacked the willfulness required for conviction under § 7203. Since Platt

---

* Of the Third Circuit, sitting by designation.

1. Raeman testified he was under the impression that a further extension was granted that would have made the filing timely, but he could produce no documentation for this.

2. Platt had likewise failed to file declarations of estimated tax and to make any payments of such tax for 1962, 1963 and 1964.

3. There was some conflict in the testimony whether Platt ever received the letter or, if he did, whether he so informed Raeman.

did not testify, the defense was presented through Raeman. He stated that he had requested and received extensions of time for filing the federal income tax returns, that these extensions had been sent by the I.R.S. to his office, and that he had told Platt that extensions had been granted. The record shows that extensions were issued in respect of 1962 from April to June 1963, in respect of 1963 from April to June 1964, then to July, to August, to September, and finally to October 1964, and in respect of 1964 from April to June 1965. However, despite a long cross-examination, the prosecutor never elicited from Raeman whether his statements to Platt that extensions had been granted related merely to the limited extensions that had in fact been obtained or constituted an assurance that these were continuing.

With the record so pleasingly ambiguous, defense counsel submitted two requested instructions here relevant, which we set forth in the footnote.[4] In his charge, after telling the jury that to ask it to conclude that the returns were filed within periods of extension "would be an

atrocious imposition on your intelligence," which was correct enough although a bit on the vigorous side, the trial judge dealt with the point raised by these requests by saying only:

There is evidence which entitles you to come to the conclusion that certain applications for extension were made and while we are not absolutely certain that they are all here, we know that in two instances misrepresentation was made that for the prior year there had been a timely return filed.

We also know that in the other cases of applications which we know about, which we have here, there was no representation made as to whether the return had been filed the previous year or not. So, somebody at some time did something about getting applications here in to the Internal Revenue, but there is no proof before you that there was a timely filing and there is no proof before you that there was a filing in 1966 within any periods of extension granted by the Internal Revenue Service.[5]

---

4.           REQUEST NO. 15
*Extension of Time*
The evidence before you indicates that for each year in question applications for extensions of time to file the defendant's returns were made and granted. Filing a return within any extension of time granted is a timely filing. If you find that the returns filed on behalf of the defendant were filed pursuant to an extension granted. or if you have a reasonable doubt about that, you shall acquit the defendant.

Even if you find beyond a reasonable doubt that one or more of the returns in question were filed beyond the period for which an extension was granted, but that the defendant was unaware of the limitation on the extended period, or if you have a reasonable doubt about that, then you shall acquit the defendant, because he did not *knowingly* fail to file his returns on time.
          REQUEST NO. 17
*Delegation of Responsibility*
*to an Accountant*
The criminal law does not penalize a taxpayer for delegating the responsibility of the preparation of his tax returns to a person whom he has reason

to believe is competent to handle such matters. The mistakes of such a person are not attributable to the taxpayer. Thus, if a taxpayer selects a person believed competent to prepare his returns and relies upon him to prepare and file proper returns, he has done all that the law requires of him.

5. The judge also said:
There has been evidence introduced here of various applications and grants of extension, but the evidence would not permit you to conclude in this case that the filings of defendant's 1962, 1963 and 1964 returns on April 15, 1966, were filed within periods of extension.

In one or two instances misrepresentations were made about the timely filing of the previous year's reports and the accountant Raeman testified he signed them either in blank or without looking at them.

You should ask yourselves whether these applications were used as a means of exploiting the IRS procedures improperly. You should ask yourselves what significance their grant or denial may have had in your judgment on the issue of wilfulness.

Counsel objected that the charge had "totally eliminated" a consideration of the extensions on the question of willfulness, sought and apparently obtained agreement that no further exception was needed where he had submitted a specific charge, and expressly excepted "to the failure to charge that the jury could infer that the defendant had been told by Mr. Raeman that extensions had been granted and that he could rely upon that."

Although defendant, in challenging the court's refusal to charge more adequately with respect to the defense of reliance, relies principally on this court's decision in Haywood Lumber & Mining Co. v. C. I. R., 2 Cir., 178 F.2d 769 (1950), and the Government seeks to distinguish it on the grounds of Platt's failure to provide Raeman with necessary information, we do not find the case to have much bearing. We there reversed a holding by the Tax Court that failure to file returns as a personal holding company was due to "willful neglect" rather than "reasonable cause" when a corporate taxpayer had requested a qualified accountant to prepare the proper returns and the accountant, although knowing the taxpayer to have been a personal holding company, had prepared only the ordinary corporation returns. The facts in that case were not in dispute. The only question was whether a corporate taxpayer who selects a competent tax expert to prepare its returns and provides him with the necessary information to do so, has done all that ordinary business care and prudence can reasonably demand—the applicable standard for "reasonable cause" as defined by the regulations. In answering that question in the affirmative, the court was careful to point out, doubtless because of the limitations on review of the Tax Court, that it was dealing not with the question of fact whether the elements which constitute reasonable cause were present, but with a question of law, what elements must be present to constitute reasonable cause.

■ We have here the different question whether the record contained an evidentiary basis sufficient to entitle the defendant to an instruction on the defense of reliance. The threshold required for this is not very high:

> A criminal defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible that evidence may be.

United States v. O'Connor, 237 F.2d 466, 474 n. 8 (2 Cir. 1956). If there were no facts in the record supporting Platt's claim of reliance, the judge would have been justified in refusing to charge more specifically on that point. But here the jury could have found that Raeman's conversations with Platt concerning extensions amounted to an assurance that such extensions would continue to be forthcoming and that all of Platt's failures, whether to file the returns or to provide Raeman with the information necessary for their preparation, were founded on an honest, although mistaken, belief that Raeman had secured such extensions.

It is no answer that it would have been much more reasonable for the jury to come to other conclusions: that Raeman never made any such broad statements to Platt; that even if he did, Platt, as an experienced businessman, could not really have believed the I.R.S. had displayed such extraordinary indulgence; and that Platt, with full knowledge of his delinquency, sanctioned Raeman's procrastination and even encouraged it by refusing to provide Raeman with the information needed to prepare the returns. These are all questions of fact which the jury should have had an opportunity to resolve. While the judge was not required to give Instructions 15 and 17 in the form submitted and would have been justified in advising the jury that on the facts here the defense of reliance should be scrutinized with particular care, he was not privileged to withdraw the point from consideration. United States v. O'Connor, *supra*. We

are bound to agree with defense counsel that this was the effect of the charge; indeed, the references to misrepresentations in applications for extension, see fn. 5, despite the lack of evidence that Platt had any knowledge of them, resulted in converting a defense shield, however fragile, into a prosecution sword.

We shall deal with two other points since these seem likely to arise again in a new trial:

■■ Platt makes a major attack on the court's having sustained the Government's objection to the admission in evidence of the quarterly and annual withholding tax returns regularly filed during the years for which he defaulted in filing income tax returns. Insofar as the contention is that this evidence was relevant to rebut any claim that the taxpayer was endeavoring to conceal the continued operation of his business, we reject it. The Government did not seek to establish criminal intent on such a theory;[6] it did not contend that Platt had intended to refrain from filing returns forever but rather that he comfortably accepted or even encouraged Raeman's sloth, thereby utilizing for his own purposes moneys which he knew he should have reported as owed to the United States. If this had been all, the court would thus have been within its discretionary power to reject evidence that has only minimal relevancy and may confuse or delay, United States v. Bowe, 360 F.2d 1, 15 (2 Cir.), cert. de-

nied, 385 U.S. 961, 87 S.Ct. 401, 17 L. Ed.2d 306 (1966). However, appellant urges that the withholding returns were also relevant to bolster the defense of reliance. Platt's knowledge that Raeman was regularly filing these returns, it is argued, would strengthen the inference that he supposed Raeman was taking care of everything which the law required. In this respect, then, the regular filing of the withholding returns was relevant—albeit indirectly—to Platt's criminal intent. Bearing in mind Judge Learned Hand's wise counsel in United States v. Matot, 146 F.2d 197 (2 Cir. 1944), concerning the latitude that should be accorded a defendant with respect to evidence tending to negate criminal intent, we think the withholding tax returns should be admitted, although the Government would be entitled to an instruction concerning their limited relevance.[7]

■ Platt also complains of the charge with respect to willfulness. After expressly rejecting the defense's contention that it was necessary to find that the failures to file "were motivated by an intent to conceal from the government the amount of taxes owed by the defendant," the judge charged:

A willful failure means a conscious, deliberate, purposeful failure as opposed to an unconscious, unwilling, negligent or mistaken failure. A defendant must know of the requirement that he file his return on or before the date fixed by law.[8]

---

6. While proof of an intent to conceal income would indeed establish willfulness, see United States v. Marquez, 332 F.2d 162, 166 (2 Cir.), cert. denied, 379 U.S. 890, 85 S.Ct. 162, 13 L.Ed.2d 94 (1964), this is not an essential element, as is shown below.

7. This is not to say we would reverse the conviction because of the exclusion. Despite that ruling, defense counsel elicited testimony from Raeman concerning the preparation and filing of the withholding returns, and the checks evidencing payment were received in evidence. The additional effect of the returns themselves would hardly be so material as to justify reversal.

8. In answer to a request from the jury, the court amplified this:

What do we mean by wilful? Within the context of the law with which we are speaking, the wilful failure is one which is voluntary, purposeful, deliberate and intentional as opposed to one which is accidental, inadvertent or careless and in short the element of wilfulness as used in this statute involves a specific wrongful intent, namely, actual knowledge of the existence of a legal obligation and the intent to evade that obligation and if you can not find that, anything less would be considered to be either a mistake or inadvertence or carelessness.

■ The instruction was entirely right. Platt's contention that § 7203 requires something more than the ordinary meaning of willfulness, namely, acting knowingly and purposefully with respect to the material elements of the offense, see A.L.I., Model Penal Code, § 2.02(8), runs counter to the teaching of Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943), as followed and applied in Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). The clear holding of these cases is that "willful" both in the felony statute, § 7201, and in the misdemeanor statute, § 7203, has its usual meaning but that this intent must exist with respect to the particular conduct made criminal. The defendant's knowing failures to file a return and to pay the tax in Spies were held insufficient to sustain a conviction under the felony statute for willfully attempting to defeat and evade the tax, not because the standard of willfulness was more exacting under the felony statute than under the misdemeanor statute but because the Court construed the former as requiring "some willful commission in addition to the willful omissions that make up the list of misdemeanors." 317 U.S. at 499, 63 S.Ct. at 368. With respect to the latter, willfulness must be determined in light of the distinct forms of conduct made criminal. Thus, "Mere voluntary and purposeful, as distinguished from accidental, omission to make a return might meet the test of willfulness," whereas "mere knowing and intentional default in payment of a tax" would not, since in that instance financial circumstances might be the cause, and the failure to pay therefore not purposeful, 317 U.S. at 497–498, 63 S.Ct. at 367.

Appellant's primary challenge to this is that to give "willful" in § 7203 only its ordinary meaning would mean that no more evil intent was required for the misdemeanor there made punishable than for the civil penalty of 5% per month up to a maximum of 25% imposed by 26 U.S.C. § 6651 for a failure to file a return other than a failure "due to reasonable cause and not due to willful neglect." It is argued that in order to avoid what is thought so irrational a result, the courts must construct for § 7203 a standard of willfulness higher than "voluntary and purposeful, as distinguished from accidental omission," the phrase used in the dictum in Spies, although without the need for "some willful commission" that exists under § 7201. This conclusion is claimed to follow from language in Spies that refers to the civil penalty as the lowest stone and the § 7201 felony as the capstone "of a system of sanctions which singly or in combination were calculated to induce prompt and forthright fulfillment of every duty under the income tax law and to provide a penalty suitable to every degree of delinquency." 317 U.S. at 497, 63 S.Ct. at 367.

We do not agree. For one thing, as pointed out in Spies, 317 U.S. at 495–496, 63 S.Ct. 366–367, the civil penalty is unavailing "when there is no tax liability to serve as a base for application of a percentage delinquency penalty." More important, even though "willful" is read as having the same meaning in 26 U.S.C. §§ 6651 and 7203, there is a significant difference in the standard of proof—preponderance of the evidence under § 6651, beyond a reasonable doubt under § 7203. Finally, as also suggested in Spies, the offense which the Government decides to prosecute under § 7203 "may be more grievous than a case for a civil penalty." 317 U.S. at 496, 63 S.Ct. at 367. A taxpayer going on a spring holiday who knows he has not filed the return that will become due on April 15 but intends to and does file it in early May, would not be a likely candidate for prosecution under § 7203 even though the elements of the offense exist; the Commissioner would almost certainly be content with the 5% penalty imposed by § 6651 unless the incident was part of a regular pattern of disobedience. We thus adhere to the statement in United States v. Schipani, 362 F.2d 825, 831 (2

Cir.), cert. denied, 385 U.S. 934, 87 S.Ct. 293, 17 L.Ed.2d 214 (1966):

> "Willfully" under § 7203 calls only for proof that the taxpayer failed to file his tax return intentionally and knowingly and not through accident or mistake or other innocent cause.

To such extent as other circuits may require something more, their struggles to define just what the more is would not encourage us to emulate them, even if we entertained greater doubt on the subject than we do.

The conviction is reversed for a new trial.